# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL GARCIA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BERNADETTE MASON, *et al.* | : | NO. 23-3913 |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                              October 29, 2024

Presently before the court is a Petition for Writ of Habeas Corpus filed by Samuel Garcia ("Petitioner"), *pro se*, pursuant to 28 U.S.C. § 2254. Petitioner, who is currently serving a term of incarceration of seventeen and one-half to thirty-five years at the State Correctional Institution – Mahanoy, seeks habeas relief based upon claims of trial court error and ineffective assistance of counsel. The Honorable Kelley Brisbon Hodge referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner not be afforded habeas relief.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

The Superior Court summarized the facts leading to Petitioner's conviction and sentence as follows:

> On October 9, 2014, at approximately 10:00 p.m., police officers responded to a call of a person screaming at the intersection of Arch Street and Farson Street in the City and County of Philadelphia. The arriving officers observed a silver Dodge Caliber and a male pointing towards the car. Upon approaching the car, officers saw blood on the driver's side of the vehicle and an additional pool of blood on the sidewalk with what appeared to be human teeth. Officer Michael Fischbach, one of the first officers on the scene, approached the vehicle and observed the victim – later identified as

---

[1] The facts set forth in this background and procedural history were gleaned from the Petition for Writ of Habeas Corpus (Document No. 2), the Commonwealth's Response (Document No. 14), Petitioner's Traverse (Document No. 15), and the exhibits attached to the parties' filings.

V.B. – sitting in the driver's seat of the vehicle and observed she had cuts, a swollen face and lacerations to her face, arms and hands. The officers on scene noted that V.B. did not appear completely cognizant, but [they] were able to gather information that the persons responsible for her attack lived with her. The officers recognized the one to two-inch slash marks on V.B. to be consistent with those inflicted by a knife. After getting the summary information from V.B.[,] the officers on scene called for an expedited response by paramedics, [and] the officers observed a knife in the interior of the Dodge Caliber.

V.B. knew [Petitioner] from a restaurant both mutually frequented. After some time, V.B. rented space in her home located at 5522 Ridgewood Street in Southwest Philadelphia to [Petitioner]. [Petitioner] consistently paid his rent on time for approximately 8 or 9 months while living with the victim; the only major point of contention between the two was [Petitioner] would eat food purchased by V.B. and his failure to pay her back for the food.

On October 9, 2014, the victim – V.B. – asked that [Petitioner] move out of the home in which he had been renting space from V.B. for 8 or 9 months. The victim wished for [Petitioner] to move out due to the slovenly nature with which he kept [his] space and for the continual taking of the victim's food without permission. After the victim asked [Petitioner] to move out of the home and to pay for the food he had taken, [Petitioner] asked V.B. for a ride to his aunt's house under the guise of collecting money from his aunt to give to the victim. The victim agreed to drive [Petitioner] to his aunt's house. At this time, the victim entered the driver's seat of her vehicle, [Petitioner] entered the front passenger seat of the vehicle and a second male entered the rear passenger seat of the vehicle. The three departed in the victim's car and upon arriving at the home of [Petitioner's] aunt, they discovered that she was not home. [Petitioner] then attempted to have V.B. drive to another location, but the victim refused. At that point, the male that was sitting in the backseat of the vehicle attempted to place something over the victim's head while she was sitting in the driver's seat. At the same time, [Petitioner] took out a knife and began to stab at the victim. After repeatedly attempting to stab the victim with the knife, it broke in [Petitioner's] hand. This broken knife blade and handle were observed by responding officers on the passenger side of the vehicle where [Petitioner] had been seated. V.B. used this opportunity to attempt to make an escape from the vehicle, but [Petitioner] continued to beat the victim inside the car. Through the beating, the victim was able to open the driver's door of the vehicle at which time she fell out of the car and onto the ground.

> Officers from the Special Investigations Unit, Southwest Detectives, of the Philadelphia Police Department recovered video of the events that unfolded outside of the vehicle from a grocery store located at 50th Street and Arch Street. The video depicts [Petitioner] and the other male exit the vehicle[,] then kick the victim on or about the head approximately 25-30 times. The resulting beating left a pool of blood near the vehicle with human teeth. The victim was transported by ambulance to the Hospital of the University of Pennsylvania. At the hospital, V.B. was treated for bleeding on the brain, right medial orbital wall fracture – a fracture to the bone in her face – and was also found to have swelling in around the eye; fractured tooth root, multiple knife lacerations, multiple absent teeth and a collection of blood resulting from the lacerations. Detective Connell attempted to make contact with the victim at the hospital for an interview, but due to her condition was unable to take such an interview. Detective Connell was able to meet with V.B. at Southwest Detectives on October 17, 2014, at which time the victim identified [Petitioner] as one of her attackers and the man who slashed at her in the vehicle prior to the knife breaking.

*Commonwealth v. Garcia*, No. 2271 EDA 2017, 2019 WL 1307403, *1-*2 (Pa. Super. Ct. Mar. 21, 2021) (quoting Tr. Ct. Op. at 1-5).  Petitioner had a one-day bench trial and was convicted of attempted murder, aggravated assault, possession of an instrument of crime ("PIC"), simple assault, and recklessly endangering another person ("REAP"). *Id.* at *2.  He was subsequently sentenced to an aggregate term of incarceration of seventeen and one-half to thirty-five years. *Id.* at *2.  The Pennsylvania Superior Court affirmed his conviction, on March 21, 2021.  *Id.* at *6.  Petitioner did not seek *allocatur* from the Pennsylvania Supreme Court.  Pet. at 6.

Petitioner filed a petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46, on June 21, 2019.  Pet. at 6.  Appointed counsel filed an amended petition, which the PCRA court dismissed, without a hearing, on September 14, 2020. *Commonwealth v. Garcia*, No. 1959 EDA 2020, 2021 WL 4281304, *1 (Pa. Super. Ct. Sept. 21, 2021).  The Superior Court affirmed, on September 21, 2021.  *Id.* at *4.  The Pennsylvania Supreme Court denied *allocatur*, on December 30, 2021.  *Commonwealth v. Garcia*, 270 A.3d 433 (Table) (Pa. 2021).

On September 15, 2023,[2] Petitioner filed the instant habeas petition, claiming: (1) the state court erred by denying his Pa. R. Crim. P. 600 speedy trial motion; (2) his sentence is excessive; (3) trial counsel was ineffective for failing to protect his rights to (a) a jury trial and (b) a speedy trial; and (4) direct appellate counsel was ineffective for failing to challenge the weight and sufficiency of the evidence. Pet. at 8, 10, 12, 13-14. The Commonwealth counters, *inter alia*, that Petitioner's claims are time-barred. Resp. at 6-10. This court agrees.

## II.   DISCUSSION

### A.   The AEDPA Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, imposes a one-year period of limitations ("AEDPA year") for habeas corpus petitions. The time period begins to run from the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

---

[2] The Clerk of Court docketed this habeas corpus petition on October 6, 2023. However, Petitioner is a *pro se* inmate, hence, his petition is deemed filed on the date he gave it to prison officials for mailing. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). Under penalty of perjury, Petitioner stated that he placed his habeas petition in the prison mailing system on September 15, 2023. Petition at 19. Hence, this court deems September 15, 2023 as the filing date pursuant to *Burns*.

28 U.S.C. § 2244(d)(1)(A)-(D). The Third Circuit has held that the starting date for the habeas period of limitations must be determined separately for each cognizable claim contained in the petition. *See Fiedler v. Varner*, 379 F.3d 113, 117-18 (3d Cir. 2004).

Petitioner did not seek *allocatur* after the Superior Court affirmed his conviction and sentence, on March 21, 2019. The time to do so expired 30 days later. Pa. R. App. P. 1113(a). Consequently, Petitioner's conviction became final on April 20, 2019.[3] 28 U.S.C. § 2244(d)(1)(A). His AEDPA year expired one year later, on April 20, 2020. Unless grounds for statutory or equitable tolling can be demonstrated, Petitioner's claims are late and must be dismissed.

**B.    Statutory and Equitable Tolling**

   **1.    Statutory Tolling**

Statutory tolling provisions provide that, "[t]he time that a properly filed application for state post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2). A properly filed application for state collateral relief is one submitted in compliance with the applicable rules governing filings such as the form of the document, the time limits on filing, the court and office in which it must be filed and the requisite filing fees.[4] *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Answering a question left open in *Artuz*, the U.S. Supreme Court later explained that, despite enumerated exceptions to the timely filing requirement, an untimely PCRA petition is not "properly filed" and cannot statutorily toll the federal habeas period of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-17 (2005).

---

[3] None of Petitioner's claims implicate an alternative starting date.
[4] The U.S. Supreme Court initially declined to decide whether the existence of exceptions to a timely filing requirement can prevent a late application from being considered improperly filed. *Artuz,* 531 U.S. at 8 n.2.

Petitioner filed his PCRA petition, on June 21, 2019. By then, 62 days of his AEDPA year had expired, leaving 303. The Pennsylvania Supreme Court denied *allocatur* on December 30, 2021. Petitioner's AEDPA year expired 303 days later, on October 31, 2022.[5] Nevertheless, Petitioner may be eligible for equitable tolling.

### 2. Equitable Tolling

Equitable tolling is available "only when the principle of equity would make the rigid application of a limitation period unfair." *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003) (internal quotations omitted). Courts should apply this doctrine sparingly. *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005). The general requirements for equitable tolling are: (1) the petitioner exercised diligence in pursuing his rights, and (2) extraordinary circumstances prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The petitioner bears the burden of proving both requirements. *Pace*, 544 U.S. at 418; *Urcinoli v. Cathel*, 546 F.3d 269, 273 (3d Cir. 2008).

Petitioner has alleged that his PCRA attorney never informed him that *allocatur* had been denied and Petitioner only discovered this fact, on May 23, 2023, after he made inquiries of the state court. Pet. at 18, Traverse at 1-2. Petitioner asserts that he attempted to contact his PCRA attorney several times before inquiring from the state court but was ignored. Traverse at 2. These allegations of PCRA counsel's dereliction could transcend what is known as "excusable neglect" to approach abandonment and, possibly, constitute extraordinary circumstances. *See Holland*, 560 U.S. at 652 (explaining that "garden variety" attorney negligence, or "excusable neglect," does not amount to extraordinary circumstances). However, Petitioner herein was not sufficiently diligent. He learned his *allocatur* petition had been denied, on May 23, 2023, but waited almost four months to file his habeas petition; this delay weighs heavily against him. *See Pace*, 544 U.S. at 419 (noting

---

[5] The 303rd day was October 29, 2022, which was a Saturday. Monday was October 31, 2022.

that Pace's five-month delay to file his habeas petition refuted the necessary diligence). Thus, Petitioner has not satisfied his burden to establish entitlement to equitable tolling of his expired AEDPA year. *Pace*, 544 U.S. at 418; *Urcinoli*, 546 F.3d at 273. Consequently, his claims should be dismissed as time-barred.[6]

### III.   CONCLUSION

All of Petitioner's claims are time-barred. Reasonable jurists would not debate this court's procedural disposition of his claims; therefore, a certificate of appealability should not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, I make the following:

### RECOMMENDATION

**AND NOW**, this 29th day of October, 2024, for the reasons contained in the preceding Report, it is hereby **RECOMMENDED** that Petitioner's claims be **DISMISSED**, without an evidentiary hearing. Petitioner has neither demonstrated that any reasonable jurist could find this court's procedural rulings debatable, nor shown denial of any federal constitutional right; hence, there is no probable cause to issue a certificate of appealability.

Petitioner may file objections to this Report and Recommendation within fourteen (14) days of being served with a copy of it. *See* Local R. Civ. P. 72.1(IV). Failure to file timely objections may constitute a waiver of any appellate rights.

It be so **ORDERED**.

           */s/ Carol Sandra Moore Wells*
           CAROL SANDRA MOORE WELLS
           United States Magistrate Judge

---

[6] Petitioner has also failed to advance any new, reliable evidence of his actual innocence to avoid the time-bar. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

7